**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION**

| | |
|---|---|
| WESTLEY KAYEON KENNEDY, | |
| Movant, | CIVIL ACTION NO.: 2:15-cv-30 |
| v. | |
| UNITED STATES OF AMERICA, | (Case No.: 2:14-cr-12) |
| Respondent. | |

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Movant Westley Kayeon Kennedy, ("Kennedy"), who is currently incarcerated at the Federal Correctional Institution, Williamsburg in Salters, South Carolina filed a Motion to Vacate, Set Aside, or Correct his Sentence pursuant to 28 U.S.C. § 2255. (Doc. 1.) Respondent filed a Response, (doc. 12), to which Kennedy filed Motions to Amend, (doc. 16, 17), and an Amended Section 2255 Motion, (doc. 17-1). Respondent filed a Response to Kennedy's Amended Section 2255 Motion, (doc. 18), and Kennedy filed a Reply, (doc. 19). For the purposes of the Court's Order, the Court **GRANTS** Kennedy's Motions to Amend, (docs. 16, 17), and considers his Amended Motion, (doc. 17-1), as the operative pleading.

However, for the reasons which follow, the Court **DENIES** Kennedy's Motion to Appoint Counsel. (Doc. 20.) Further, I **RECOMMEND** that the Court **DENY** Kennedy's Amended Section 2255 Motion, **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal, and **DENY** Kennedy a Certificate of Appealability and *in forma pauperis* status on appeal.

# BACKGROUND

In this Section 2255 Motion, Kennedy challenges a conviction and sentence he received in this Court, after entry of a guilty plea to the lesser included offense of conspiracy to possess with intent to distribute, and to distribute, a quantity of controlled substances, in violation of 21 U.S.C. § 846. J., United States v. Kennedy, et al., 2:14-cr-12 (S.D. Ga. Feb. 23, 2015), ECF No. 627. Kennedy had a recommended total offense level of 37 and criminal history category IV. (Pre-Sentence Investigation Report ("PSI"), ¶ 70.) Based on this offense level and category, Kennedy's advisory sentencing guideline range was 360 months to life. (Id.) However, the statutory maximum term of imprisonment for the crime to which he pleaded guilty is twenty (20) years, or 240 months. See 21 U.S.C. §§ 846 and 841(b)(1)(C); U.S.S.G. § 5G1.1(a); (PSI ¶ 70). The Honorable Lisa Godbey Wood sentenced Kennedy to the maximum allowed 240 months' imprisonment. J., United States v. Kennedy, et al., 2:14-cr-12 (S.D. Ga. Feb. 23, 2015), ECF No. 627. The Court appointed B. Reid Zeh, III to represent Kennedy during these proceedings. CJA 20, United States v. Kennedy, et al., 2:14-cr-12 (S.D. Ga. Apr. 11, 2014), ECF No. 43.

In June 2014, the grand jury for the Southern District of Georgia returned a superseding indictment against Kennedy and twelve others for twenty-two (22) violations of federal law. Superseding Indictment, United States v. Kennedy, et al., 2:14-cr-12 (S.D. Ga. June 4, 2014), ECF No. 208. Specifically, Kennedy was charged with conspiracy to possess with intent to distribute, and to distribute, fifty (50) grams or more of a mixture of methamphetamine, and quantities of cocaine and oxycodone, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), (b)(1)(C), and § 846 (Count 1); two counts of distribution of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C) and 18 U.S.C. § 2 (Counts 3, 4); and eight counts of use of a communication facility (cell phones), in violation of 21 U.S.C. § 843(b) (Counts 7-8, 10-12, 16-

18).  (Id.)  If convicted of each Count, Kennedy faced a potential maximum sentence of 120 years' imprisonment, fines totaling $9,000,000.00, or both.  Penalty Certification, United States v. Kennedy, et al., 2:14-cr-12 (S.D. Ga. June 4, 2014), ECF No. 209.

However, Kennedy and his attorney, Mr. Zeh, were able to negotiate a plea agreement with the Government whereby Kennedy agreed to plead guilty to the lesser included offense of Count One, violation of Section 846, in exchange for the Government dropping the remaining charges.  Plea Agreement, United States v. Kennedy, et al., 2:14-cr-12 (S.D. Ga. July 15, 2014), ECF No. 425, pp. 2–3.  As indicated above, the statutory maximum term of imprisonment for the violation to which Kennedy pleaded is twenty (20) years.  Under the terms of the plea agreement, Kennedy promised to, among other things, acknowledge the factual basis of his plea, cooperate with the government for a downward departure, waive his right to direct appeal (with limited exception), and waive his right to collaterally attack his sentence.  Id. at p. 3.  In return, the Government promised to refrain from objecting to an acceptance of responsibility reduction, not file a 21 U.S.C. § 851 enhancement, and to consider whether Kennedy's cooperation sufficed for a downward departure.  Id. at p. 2.

Kennedy appeared before Judge Wood for his change of plea, or Rule 11, proceeding.  Judge Wood addressed Kennedy and informed him the purpose of the hearing was to ensure that he understood the case that was pending against him, that he understood all of the rights he was waiving or giving up by pleading guilty, and that there was a factual basis for the guilty plea.  Change of Plea Hr'g Tr., United States v. Kennedy, et al., 2:14-cr-12 (S.D. Ga. June 10, 2015), ECF No. 666, pp. 2–3.  Judge Wood inquired whether anyone had forced Kennedy to offer to plead guilty, and he said no one had done so and that pleading guilty was what he wanted to do.  Id. at p. 3.  Judge Wood told Kennedy that he did not have to plead guilty, and if he chose to

persist in his not guilty plea, he would have the right to: a public and speedy trial by jury; a presumption of innocence during that trial; the assistance of trial counsel; see, hear, confront, and cross-examine the Government's witnesses and evidence; call witnesses on his behalf; and testify himself or remain silent. Id. at pp. 6–8. However, Judge Wood cautioned Kennedy he would be waiving these rights if he pleaded guilty and if she accepted that guilty plea. Id. at p. 8.

Kennedy stated he understood. Id. at pp. 6–8. Kennedy also stated he and Mr. Zeh reviewed the Superseding Indictment together, that he had the opportunity to talk to Mr. Zeh about the facts of his case, as well as about the proposed plea agreement, and that Mr. Zeh had discussed the law and procedure pertaining to his case. Id. at pp. 9–10. Kennedy stated that he was satisfied with Mr. Zeh's services and that he had no complaints whatsoever. Id. at p. 12.

Judge Wood reviewed the counts of the Superseding Indictment applicable to Kennedy with him and the essential elements of the crimes for which he was charged and that the Government would have to prove if he went to trial. Id. at pp. 10–14. Judge Wood advised Kennedy of the maximum sentence she could impose, twenty (20) years, for the crime to which he was pleading. Id. at pp. 13–14. Moreover, Judge Wood explained to Kennedy that, in imposing a sentence upon him, she would have to take into consideration the advisory Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553. Id. at pp. 14–15. Kennedy stated that no one had promised him an exact sentence, and Judge Wood explained that anyone's estimation of what his sentence might be would in no way bind the Court. Id. at p. 15. Judge Wood then asked the Assistant United States Attorney ("AUSA") to summarize the provisions of the plea agreement. AUSA Carlton Bourne stated:

> Your Honor, the Government agrees not to object to a recommendation from the Probation Office that the Defendant receive a three-level reduction for acceptance of responsibility based on the timeliness of his plea and provided that he truthfully admits the conduct. The Government agrees to dismiss the remaining counts of

the Superseding Indictment as to this Defendant. The Government agrees not to file an 851 enhancement against this Defendant. If the Defendant cooperates, the Government agrees to consider his cooperation with the Government qualifies as "substantial assistance" and warrants the filing of a motion for downward departure or a motion to reduce sentence.

In exchange, the Defendant agrees to plead guilty to the lesser included offense of Count One; acknowledge at the time of the plea the truth of the factual basis; pay on the date of sentencing any assessments imposed by the Court. If he cooperates, he agrees to provide full, complete, candid, and truthful cooperation.

He agrees to waive his right to appeal with three exceptions. And he agrees to entirely waive his right to collaterally attack his conviction and sentence on any ground, including a Section 2255 motion.

Id. at pp. 16–17. Judge Wood asked Kennedy if AUSA Bourne's summarization of the plea agreement was consistent with the plea agreement he signed, and he stated it was. Id. at p. 17. Kennedy also stated he read the plea agreement, and Mr. Zeh answered any questions he may have had before he signed the agreement. Id. Kennedy reaffirmed that no one had made him any promises regarding the outcome of his case, other than the provisions contained in the plea agreement. Id.

Judge Wood then specifically addressed the direct appeal waiver with Kennedy:

I want to follow up on something that Mr. Bourne referenced. And that is, as a part of this plea agreement that you are urging, it does contain a waiver of appellate rights. It states: Defendant entirely waives his right to direct appeal of his conviction. The Defendant agrees to waive his right to appeal the sentence. Now there are three exceptions to that appeal waiver. That is, if one of these three things were to occur, you would be able to appeal directly, but only if one of these three things were to occur. Number one, if I were to sentence you above the statutory maximum, then you could appeal that directly; or number two, if I were to sentence you above the advisory guideline range as found by me, then you could appeal that directly; or number three, if the Government were to file a direct appeal, then you too could file a direct appeal. But otherwise, aside from those three situations, by virtue of this plea agreement that you are proposing, you waive all other direct appeal rights. Understand?

Id. at pp. 17–18. Kennedy stated he understood this provision. Id. Judge Wood also stated that the proposed plea agreement contained a waiver of Kennedy's collateral attack rights. When

asked if he understood that provision, Kennedy replied that he did and that he had no questions whatsoever about it. Id. at p. 18.

Judge Wood asked Mr. Zeh and AUSA Bourne whether they were aware of any impropriety on the part of the Government in handling Kennedy's case, and they both responded no. Id. at p. 19. Judge Wood then asked Kennedy whether he wished to still plead guilty to the lesser included offense of Count One of the Superseding Indictment because he was in fact guilty of that count, and he answered in the affirmative. Id. Judge Wood also asked Kennedy whether he understood the rights and privileges he was waiving if she accepted his plea, and he said he did. Id. at pp. 19–20. Judge Wood determined Kennedy participated in the Rule 11 proceedings "knowingly" and "intelligently." Id. at p. 20. Further, Judge Wood determined Kennedy's plea was "knowing" and "voluntary," and Kennedy agreed. Id.

Robert Livingston, a special agent with the Drug Enforcement Administration ("DEA") in Savannah, provided the Government's factual basis for the plea. Id. at pp. 21–22. Special Agent Livingston testified that, in addition to information gleaned from informants, the DEA's investigation of Kennedy included a wiretap on his personal phone and two controlled purchases of methamphetamine from him. Id. This investigation intercepted numerous telephone calls related to drug distribution and revealed a conspiracy to distribute methamphetamine, cocaine, and oxycodone in the Bacon County area. Id. Mr. Zeh had no questions for Special Agent Livingston on cross-examination. Id.

After hearing from Kennedy again, during which time Kennedy agreed with the Government's factual basis and admitted the truth of Special Agent Livingston's testimony, Judge Wood accepted Kennedy's plea and adjudged him guilty of the lesser included offense of Count One of the Superseding Indictment—violation of Section 846. Id. at p. 23. Judge Wood

advised Kennedy that the Probation Office would prepare a PSI and the Court would schedule a sentencing hearing after the PSI was disclosed to the Government and Mr. Zeh. Id.

In the PSI, the Probation Officer attributed at least 1,024.9 grams of "ice" methamphetamine to Kennedy, which indicated a base offense level of 34, pursuant to United States Sentencing Guidelines § 2D1.1. (PSI, ¶¶ 19, 25.) The Probation Officer increased the offense level by three, pursuant to United States Sentencing Guidelines § 3B1.1(b)(1), for his supervising role in the criminal conspiracy. (PSI, ¶ 28.) Kennedy did not receive a three point reduction under United States Sentencing Guidelines § 3E1.1 for accepting responsibility in a timely manner because the Probation Officer found that Kennedy falsely denied relevant conduct. (PSI, ¶¶ 23, 32.) The Probation Officer recommended that Kennedy's total offense level was 37. (PSI, ¶ 33.) With a criminal history of nine and a two-point increase for committing the instant offense while under a criminal justice sentence, his criminal history fell within category VI. (PSI, ¶ 40–43.) With a total offense level of 37 and criminal history category of VI, Kennedy's recommended advisory Guidelines' range was imprisonment for 360 months to life. (PSI, ¶ 70.) However, because the statutory maximum term of imprisonment was 20 years, or 240 months, Kennedy's Guidelines range was reduced to match that maximum allowed sentence. (Id. (citing U.S.S.G. § 5G1.1(a).) Mr. Zeh filed objections to the PSI concerning the contents of nine (9) intercepted phone calls, the drug amount calculations, and the denial of an acceptance of responsibility reduction. (PSI, Addendum.)

At the sentencing hearing, Judge Wood asked Kennedy whether he had the opportunity to read and review the PSI and its addendum with his attorney. Kennedy answered in the affirmative. Sent. Hr'g Tr., United States v. Kennedy, et al., 2:14-cr-12 (S.D. Ga. June 18, 2015), ECF No. 672, pp. 3–4. Mr. Zeh noted that Kennedy had a remaining objection to the

PSI's characterization of one phone intercept, and that he had withdrawn the other phone call objections. Id. Kennedy asserted that what he really said in the challenged phone call was "cutie of that girl or gal" (referring to a quarter ounce of cocaine) rather than "kilo of that gas" (referring to methamphetamine).[1] Id. at p. 5.

In response, Special Agent Livingston stated the Government had recorded 1,907 pertinent phone calls related to drug dealing during its sixty-day wiretap of two of Kennedy's phones; the Government also conducted two controlled purchases of methamphetamine from Kennedy, each of those for approximately twelve grams. Id. at pp. 8–9. This investigation revealed Kennedy's drug dealings with over fifty people, some of whom were indicted and provided information about the amount of drugs Kennedy dealt. Id. at pp. 10–11. Special Agent Livingston testified that Kennedy was a high-volume drug trafficker based on the sheer number of transactions he took part in. Id. Special Agent Livingston then read the transcript of the challenged phone call aloud, and Mr. Bourne played the audio twice for Judge Wood. Id. at pp. 14–15. On cross-examination, Mr. Zeh pressed Special Agent Livingston on the probable meaning of "cutie of that gal" and about the Government informants against Kennedy. Id. at pp. 16–18.

Judge Wood then overruled Kennedy's objection, finding that the preponderance of the evidence showed the conclusion in the PSI about this particular phone call to be correct.[2] Id. at pp. 22–23. However, Judge Wood sustained Kennedy's acceptance of responsibility objection and granted him a three-point reduction. Id. Judge Wood reviewed the advisory Guidelines and

---

[1] The term "gas" was used by participants of this conspiracy to indicate "ice" methamphetamine. Sent. Hr'g Tr., <u>United States v. Kennedy, et al.</u>, 2:14-cr-12 (S.D. Ga. June 18, 2015), ECF No. 672, p. 12; <u>see also</u> (PSI, Addendum.).

[2] The Government noted that, even discounting this phone call, Kennedy's other relevant conduct, including the controlled buys and intercepted phone calls, would still put him at base offense level 34. Sent. Hr'g Tr., <u>United States v. Kennedy, et al.</u>, 2:14-cr-12 (S.D. Ga. June 18, 2015), ECF No. 672, p. 21.

determined Kennedy's total offense level was 34 with a criminal history category of VI, which called for 240 months of imprisonment and three years' supervised release under the advisory Guidelines. Id. Judge Wood also noted that there was no statutory minimum sentence but there was a twenty-year maximum sentence. Id. Mr. Zeh did not call any witnesses on behalf of Kennedy. Id. AUSA Bourne testified that Kennedy was given an opportunity to cooperate for a downward departure but refused to do so and concluded that Kennedy's conduct was deserving of the 240 months' Guidelines sentence. Id. at p. 24. Kennedy then addressed the Court and apologized for his actions. Id. at p. 25.

After hearing from Mr. Zeh, the AUSA, and Kennedy, and having reviewed the PSI and the sentencing factors of 18 U.S.C. § 3553, Judge Wood sentenced Kennedy to 240 months' imprisonment and three years' supervised release. Id. at pp. 25–26; J., United States v. Kennedy, et al., 2:14-cr-12 (S.D. Ga. Feb. 18, 2015), ECF No. 627. Judge Wood remarked that she saw no reason to depart from the guideline sentence called for in this case. Sent. Hr'g Tr., United States v. Kennedy, et al., 2:14-cr-12 (S.D. Ga. June 18, 2015), ECF No. 672, p. 26. In addition, Judge Wood recommended Kennedy be evaluated for possible participation in a substance abuse treatment program during his incarceration. Id. Moreover, Judge Wood reminded Kennedy of the appeal waiver provisions contained in his plea agreement during the sentencing hearing. Id.

After his sentencing, Kennedy and Mr. Zeh executed a Post-Conviction Consultation Certificate, in which Mr. Zeh certified that he met with Kennedy, explained to Kennedy the appellate process and his rights, advised Kennedy of the advantages and disadvantages of filing an appeal, and asked whether Kennedy was interested in appealing his conviction. Notice, United States v. Kennedy, et al., 2:14-cr-12 (S.D. Ga. Feb. 19, 2015), ECF No. 623. After this consultation, Kennedy "decided to file an appeal," and instructed Mr. Zeh to file it for him. Id.

Kennedy and Mr. Zeh signed this Notice. Id. Kennedy then filed a direct appeal of his conviction with the Eleventh Circuit Court of Appeals. Notice, <u>United States v. Kennedy, et al.</u>, 2:14-cr-12 (S.D. Ga. Feb. 19, 2015), ECF No. 624. Kennedy simultaneously filed his timely Section 2255 Motion on March 3, 2015. (Doc. 1.) The Court stayed his Section 2255 motion pending the outcome of his direct appeal. (Docs. 6, 7.)

In his direct appeal, Kennedy argued that his attorney, Mr. Zeh, provided ineffective assistance of counsel and committed legal malpractice, while operating under a conflict of interest.[3] Notice, <u>United States v. Kennedy, et al.</u>, 2:14-cr-12 (S.D. Ga. Mar. 3, 2015), ECF No. 634. On appeal, Kennedy filed a motion for substitution of counsel, which the Eleventh Circuit granted. Order, <u>United States v. Kennedy</u>, 15-10780-DD (11th Cir. Feb. 18, 2016). The Eleventh Circuit appointed Mr. Ricardo Bascuas as Kennedy's appellate counsel. In Kennedy's appellate Brief, Mr. Bascuas amended Kennedy's grounds for appeal contending that Kennedy's appeal waivers were unconscionable as a matter of law in light of Mr. Zeh's alleged conflict of interest, and arguing that Kennedy's conviction should be reversed without a showing of prejudice because Mr. Zeh's alleged conflict of interest crippled the adversarial structure and integrity of the judicial system.[4] Appellant's Brief, <u>United States v. Kennedy</u>, 15-10780-DD

---

[3] Kennedy asserted these same grounds for relief in his initial Section 2255 Motion. (Doc. 1.)

[4] Kennedy's appellate attorney filed a Notice with this Court suggesting he be appointed counsel for Kennedy in this Section 2255 proceeding to present the same argument asserted on appeal to the Eleventh Circuit, namely that Kennedy should not be required to show prejudice or that the alleged conflict of interest adversely affected his lawyer's performance because the nature of the conflict and the Government's failure to alert the district court to it during trial. (Docs. 13, 13-1.) The Eleventh Circuit declined to take up this argument and denied Kennedy's appeal; the United States Supreme Court then denied Kennedy's Writ of Certiorari. Op., <u>United States v. Kennedy, et al.</u>, 2:14-cr-12 (S.D. Ga. Feb. 3, 2017), ECF No. 784; (Doc. 15.) This Court does the same and finds no cause to appoint Mr. Bascuas on this proceeding. <u>See</u> <u>McCorkle v. United States</u>, 325 Fed. App'x 804, 808 (11th Cir. 2009) (per curiam) ("[P]etitioner first argues that counsel's representation was a per se violation of the Sixth Amendment right to effective assistance because counsel participated in petitioner's criminal activities. This argument fails because this circuit does not recognize a per se violation of the right to effective assistance of counsel." (citing <u>Pegg</u>, 253 F.3d at 1277 (declining to apply the Second Circuit's per se analysis, but

(11th Cir. Apr. 25, 2016), p. 13–14, 25–26, 28. The Government filed a Motion to Dismiss in response, contending that Kennedy waived his right to appeal, that his guilty plea waived his conflict-of-interest claim, and that the Eleventh Circuit should disregard his conflict-of-interest claim because it was actually an ineffective assistance of counsel claim unfit for consideration on direct appeal. Mot. to Dismiss, United States v. Kennedy, 15-10780-DD (11th Cir. June 10, 2016). The Eleventh Circuit granted the Government's Motion, in part, as to Kennedy's argument that his plea waiver was unconscionable as a matter of law, but denied the Government's Motion with respect to Kennedy's argument that his guilty plea was involuntary due to Mr. Zeh's alleged conflict of interest. Op., United States v. Kennedy, et al., 2:14-cr-12 (S.D. Ga. Feb. 3, 2017), ECF No. 784, pp. 1–2. Accordingly, the Court affirmed Kennedy's conviction, without prejudice to his ability to raise his conflict-of-interest claim on collateral review.[5] Id.

Following the conclusion of Kennedy's direct appeal, the Government filed a Response to Kennedy's Section 2255 Motion in this case, (doc. 12). In short, the Government contends

---

instead employing the actual conflict with an adverse effect analysis))). Mr. Bascuas also filed a Motion to Appoint Counsel on Kennedy's behalf, reiterating the contentions for appointed counsel made in his Notice. (Doc. 20) There is no automatic constitutional right to counsel in habeas proceedings. See Pennsylvania v. Finley, 481 U.S. 551, 555 (1987); United States v. Webb, 565 F.3d 789, 794 (11th Cir. 2009) (citing Barbour v. Haley, 471 F.3d 1222, 1227 (11th Cir. 2006)); Hooks v. Wainwright, 775 F.2d 1433, 1438 (11th Cir. 1985); see also Barbour, 471 F.3d at 1227–32 (even defendants sentenced to death do not enjoy a constitutional right to post-conviction counsel). Under 18 U.S.C. § 3006A(a)(2)(B), the Court may appoint counsel for an indigent litigant seeking relief under 28 U.S.C. § 2255, but such requests are discretionary when "due process or the 'interests of justice'" so require. Hooks, 775 F.2d at 1438; Norris v. Wainwright, 588 F.2d 130, 133 (5th Cir. 1979); see also 28 U.S.C. § 2255(g) and Rule 8(c) of the Rules Governing Section 2255 Cases in the United States District Courts (authorizing appointment of counsel pursuant to 18 U.S.C. § 3006A). Moreover, appointment of counsel is "a privilege that is justified only by exceptional circumstances[.]" McCall v. Cook, 495 F. App'x 29, 31 (11th Cir. 2012). The Court does not find any exceptional circumstances justifying the appointment of counsel in this case. Nor does Mr. Bascuas lay out any such circumstances in his Motion to Appoint Counsel filed on Kennedy's behalf. Therefore, the Court **DENIES** this request for appointment of counsel.

[5] Kennedy then filed a Writ of Certiorari to the Supreme Court, which was denied. (Doc. 15.)

that Kennedy's ineffective assistance of counsel claim premised on Mr. Zeh's alleged conflict of interest is entirely conclusory and thus insufficient to warrant relief. (Doc. 12.) Kennedy filed Motions to Amend his Section 2255 Motion, (docs. 16, 17), and an Amended Section 2255 Motion, (doc. 17-1). The Government filed another Response noting that it did not oppose Kennedy's Motion to Amend and reiterated its earlier argument against Kennedy's Section 2255 Motion. (Doc. 18.) Kennedy followed with a Reply reasserting his right to amend. (Doc. 19.)

## DISCUSSION

In his Amended Section 2255 Motion, Kennedy combines his legal malpractice and conflict-of-interest claims asserted in his initial Motion into a singular ineffective assistance of counsel claim, and expounds upon the same. (Doc. 17-1, pp. 11–20.) Kennedy also alleges a new ground for relief—prosecutorial misconduct. (Id. at pp. 2–11.) As to his ineffective assistance of counsel claim, Kennedy primarily asserts that Mr. Zeh was operating under a conflict of interest, and in collusion with the Government, because he represented a "co-defendant" witness against Kennedy thereby rendering his guilty plea involuntary. (Id. at pp. 11–12, 18–19.) In the absence of Mr. Zeh's alleged conflict of interest and other unprofessional errors, Kennedy would have "insisted on proceeding to trial to test the [G]overnment's proofs." (Id. at p. 12.) Additionally, Kennedy alleges Mr. Zeh provided ineffective assistance because, *inter alia*, he advised Kennedy to plead guilty without first obtaining a PSI, wrongly promised Kennedy that no sentencing enhancements would be applied, failed to object to the PSI career offender enhancement determination, failed to properly investigate and advise Kennedy of all aspects of his case, and falsely informed Kennedy that his sentence would only be 84 to 120 months' imprisonment. (Id. at pp. 13–15, 17, 20.) Finally,

Kennedy argues the Government breached their plea deal by applying a sentencing enhancement, and Mr. Zeh failed to preserve that issue for appeal. (Id. at 15, 20.)

As to his prosecutorial misconduct claim, Kennedy asserts, *inter alia*, the Government withheld exculpatory evidence, improperly obtained information against Kennedy from a witness who was Mr. Zeh's client, illegally obtained an indictment against Kennedy by a non-authorized AUSA, and failed to disclose evidence as required by the Federal Rules of Evidence and other law. (Id. at pp. 4–7, 11.) Additionally, Kennedy contends the Government illegally obtained incriminating evidence against him, miscalculated the amount of drugs attributed to him, and failed to let him inspect and copy evidence intended for use at trial. (Id. at pp. 3–4, 9–10.)

The Government responds that Kennedy's claims of ineffective assistance are conclusory, and his Section 2255 Motion should be denied as a result. (Doc. 12.) Specifically, the Government asserts that the record discredits Kennedy's claim that his plea was unknowing or involuntary. (Id. at p. 7.) As to the alleged conflict of interest, the Government states that Mr. Zeh previously represented a defendant, Tawan Carter, who provided information against Kennedy; however, Mr. Carter was not a witness for the Government and was never going to be.[6] (Id. at p. 13.) Moreover, none of the drugs attributed to Kennedy by Mr. Carter were counted against him in his sentencing Guidelines calculation. (Id.) The Government contends Kennedy cannot show Mr. Zeh's prior representation of Mr. Carter "adversely affected" his representation of Kennedy, even if he can show there was an "actual conflict." (Id. at pp. 13–14.) Finally, the Government argues that Kennedy's assertions about Mr. Zeh's deficient

---

[6] Mr. Zeh filed an affidavit wherein he swore that, while representing Kennedy in a state criminal case before Kennedy's federal indictment, he notified Kennedy of his prior representation of Mr. Carter without objection. (Doc. 12-4.) Further, Mr. Zeh did not know that Mr. Carter had provided information against Kennedy because Mr. Carter did so using Kennedy's alias, "KK," of which Mr. Zeh was unaware. (Id.) Finally, Mr. Zeh was informed that the Government would not call Mr. Carter as a witness in its case against Kennedy and that any information he provided would not be utilized. (Id.)

performance are also conclusory, involve matters strategic matters left to counsel's discretion, and fail to show any prejudice as required for an ineffective assistance of counsel claim. (Id. at pp. 15–17.) As to Kennedy's prosecutorial misconduct claim, the Government argues that, like his ineffective assistance of counsel claim, his allegations are conclusory and factually insufficient to warrant even a hearing. (Doc. 18, p. 2.)

The Court addresses the parties' contentions in turn.

## I. Kennedy's Ineffective Assistance of Counsel Claims

Criminal defendants have a right to effective assistance of counsel at all critical stages of the proceedings. Strickland v. Washington, 466 U.S. 668 (1984). This right extends to the entry of a guilty plea, Hill v. Lockhart, 474 U.S. 52, 58 (1985), and during sentencing proceedings, Glover v. United States, 531 U.S. 198, 202 (2001). Furthermore, the right to effective assistance of counsel includes the right to representation free from conflicts of interest. Cuyler v. Sullivan, 446 U.S. 335, 348–50 (1980). Initially, it should be noted that a defendant's guilty plea, appeal waiver, or collateral attack waiver does not preclude an ineffective assistance of counsel claim premised on an involuntary and unintelligent plea. United States v. Puentes-Hurtado, 794 F.3d 1278, 1281, 1285 (11th Cir. 2005).

To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate (1) his counsel's performance was deficient, i.e., the performance fell below an objective standard of reasonableness, and (2) he suffered prejudice as a result of that deficient performance. Strickland, 466 U.S. at 685–86. The deficient performance requirement concerns "whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." Hill, 474 U.S. at 56. There is a strong presumption that counsel's conduct fell

within the range of reasonable professional assistance. Davis v. United States, 404 F. App'x 336, 337 (11th Cir. 2010) (citing Strickland, 466 U.S. at 686).

### A. **Cuyler Standard**

In a conflict of interest based ineffective assistance of counsel claim, however, a defendant need not show he suffered prejudice to prevail. Instead, prejudice will be presumed where a "defendant demonstrates that counsel 'actively represented conflicting interests' and that an 'actual conflict of interest adversely affected his lawyer's performance.'" Strickland, 466 U.S. at 692 (quoting Cuyler, 446 U.S. at 350, 348). Prejudice need not be shown because joint representation of criminal defendants is inherently suspect; counsel's conflicting obligations to multiple defendants "effectively seal[s] his lips on crucial matters" and makes it difficult to measure the precise harm arising from counsel's errors. Holloway v. Arkansas, 435 U.S. 475, 489–90 (1978). Conflicting representation poses further constitutional concern because an attorney is unable to "offer full and candid advice to one client where the attorney knows that advice will cause harm to another client." LoConte v. Dugger, 847 F.2d 745, 755 (11th Cir. 1988). Although the absence of joint representation is not determinative in a conflicting-interests ineffective assistance of counsel claim, it is generally "more difficult to prove that successive representation caused an actual conflict of interest than that simultaneous representation did so." Smith v. White, 815 F.2d 1401, 1405 (11th Cir. 1987). Thus, to establish ineffective assistance of counsel in a conflict of interest situation, a defendant who did not object at trial "must demonstrate that an [1] actual conflict of interest [2] adversely affected his lawyer's performance." Cuyler, 446 U.S. at 348.

### (1) Actual Conflict of Interest

To establish that an "actual conflict" hindered a lawyer's performance, in both the successive and simultaneous representation context, a defendant must make a showing of "inconsistent interests." Smith, 815 F.2d at 1405; see also Freund v. Butterworth, 165 F.3d 839, 859–60 (11th Cir. 1999) (holding that to prove an ""actual conflict"" hindered a lawyer''s performance, a defendant must make a factual showing of inconsistent interests or point to specific instances in record to suggest an actual impairment of the defendant's interests). In a successive representation case, like that at issue here, "mere proof that a criminal defendant's counsel previously represented a witness is insufficient" to show "inconsistent interests." Id. At a bare minimum, a defendant must show that either "(1) counsel's earlier representation of the witness was substantially and particularly related to counsel's later representation of defendant, or (2) counsel actually learned particular confidential information during the prior representation of the witness that was relevant to defendant's later case." Id. However, even proof of *both* substantial relatedness and confidential information may not necessarily be enough to demonstrate "inconsistent interests" in a successive representation case; other proof of "inconsistent interests" may be necessary. Id. at 1406. To make this showing, defendants must "point to specific instances in the record to suggest an actual conflict or impairment of their interests," which requires a "*factual* showing of inconsistent interests." Barham v. United States, 724 F.2d 1529, 1532 (11th Cir. 1984) (emphasis added) (quoting United States v. Fox, 613 F.2d 99, 102 (5th Cir. 1980) and Unites States v. Mers, 701 F.2d 1321, 1328 (11th Cir. 1983)).

In this successive representation case, Kennedy avers that Mr. Zeh operated under a conflict of interest because he represented a defendant, Tawan Carter, in an earlier case who

implicated Kennedy in the subject crimes.[7]  Kennedy alleges that Mr. Zeh "acted in collusion with the Government" and violated his obligations by failing to discover and notify the Court and Kennedy of this conflict.  (Doc. 17-1, pp. 12–13.)  Although Kennedy's Section 2255 Motion is devoid of specific facts regarding the alleged conflict, the very nature of it shows a possible "actual conflict."

Given this relationship between Mr. Zeh's representation of Kennedy and of Mr. Carter, Kennedy has shown that Mr. Zeh's "earlier representation of the [informant] was substantially related to [his] later representation of defendant."  Smith, at 815 F.2d at 1405.  Because Mr. Carter proffered information against Kennedy during the course of his attorney-client relationship with Mr. Zeh, Kennedy has shown that Mr. Zeh "actually learned particular confidential information during the prior representation of the [informant] that was relevant to defendant's later case."  Id.  Nonetheless, in this case, prima facie proof of a substantial relationship and transmission of confidential information is insufficient to demonstrate the requisite "inconsistent interests" to show an "actual conflict" on the part of Mr. Zeh.  As the Eleventh Circuit held in Smith, proof of one of these elements is a floor for establishing "inconsistent interests," other proof may be necessary.  Id. at 1405–06.  Here, Kennedy offers nothing but bare conclusions about Mr. Zeh's alleged conflict of interest and fails to show specific facts regarding the information Mr. Zeh learned from Mr. Carter or any other proof of "inconsistent interests" on the part of Mr. Zeh.

Moreover, Mr. Zeh swore that, in the course his representation of Kennedy, he never determined that Mr. Carter had proffered information against Kennedy.  (Doc. 12-4, pp. 2–3.)

---

[7]  Kennedy describes Mr. Carter a "co-defendant," (doc. 17-1, p. 12), but Mr. Carter was not an actual co-defendant in this case.  Rather, Mr. Zeh represented Mr. Carter in a separate proceeding where Mr. Carter proffered information against Kennedy that implicated Kennedy in the subject crimes.  (Doc. 12, p. 13; doc. 12-4.)

During Mr. Carter's proffer statement in Mr. Zeh's presence, Mr. Carter only ever referred to Kennedy as "KK." (Id.) Mr. Zeh further swore that Kennedy never mentioned any potential conflict of interest until after he was sentenced, despite Mr. Zeh disclosing his representation of Mr. Carter at the outset of his representation of Kennedy. (Id.) With no knowledge as to "KK's" true identity, it would be all but impossible for Mr. Zeh to have an "actual conflict" in favor of Mr. Carter over a person whom he did not know. Further, the Government neither used nor planned to use Mr. Carter as a witness in Kennedy's case and, when calculating his sentence under the guidelines, did not count against him any drugs attributed to Kennedy by Mr. Carter. (Doc. 12, p. 13; doc. 12-4, p. 3.) Instead, the Government intended to rely on the two controlled purchases of drugs from Kennedy and the almost 2,000 drug related phone calls intercepted during court-ordered wiretaps of Kennedy's phones. (Id.) Finally, Kennedy fails to offer any factual allegations showing that Mr. Zeh served Mr. Carter's interests during his representation of Kennedy. Facing this background, Kennedy's conclusory allegations of Mr. Zeh's alleged conflict do not establish that he operated with the "inconsistent interests" needed to show an "actual conflict." See Freund, 165 F.3d at 859 ("Overall, the 'actual conflict' inquiry is fact-specific, consistent with the petitioner's ultimate burden 'to prove that his conviction was unconstitutional.'") (citation omitted); see also Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (noting that "conclusory allegations unsupported by specifics" are insufficient to warrant even an evidentiary hearing) (quoting Stano v. Dugger, 901 F.2d 898, 899 (11th Cir. 1990) (en banc).

### (2) Adverse Effect on Counsel's Performance

Even assuming, *arguendo*, that Kennedy could show Mr. Zeh had inconsistent interests such that he was actually conflicted, Kennedy cannot show that this alleged conflict "adversely

affected" his counsel's performance. To establish that a lawyer's performance was "adversely affected" by the conflict of interest, a defendant must show: "(1) the existence of a plausible alternative defense strategy or tactic that might have been pursued; (2) that the alternative strategy or tactic was reasonable under the facts; and (3) a link between the actual conflict and the decision to forgo the alternative strategy of defense." Pegg v. United States, 253 F.3d 1274, 1278 (11th Cir. 2001) (citing Freund, 165 F.3d at 860). This link must "establish that the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests." Freund, 165 F.3d at 860 (quoting United States v. Fahey, 769 F.2d 829, 836 (1st Cir. 1985)); see also Barham, 724 F.2d at 1532 ("[A defendant] must demonstrate that the attorney made a choice between possible alternative courses of action, such as eliciting (or failing to elicit) evidence helpful to one client but harmful to the other.").

When a guilty plea is involved, the Court "looks at whether the attorney's actual conflict affected the defendant's decision to plead guilty." Pegg, 253 F.3d at 1278 (citing LoConte, 847 F.2d at 755). Additionally, when a defendant pleads guilty, he or she waives all challenges to non-jurisdictional defects occurring prior to the plea entry and may generally only challenge the voluntariness of the plea itself. See United States v. Broce, 488 U.S. 563, 574–75 (1989); Tiemens v. United States, 724 F.2d 928, 929 (11th Cir. 1984); see also United States v. Harbolt, 426 F.2d 1346, 1347 (5th Cir. 1970) (per curiam) (holding that since "'the guilty plea was voluntary the [movant] must be said to have waived the conflict of interest theory.'" (quoting Martin v. United States, 256 F.2d 345, 349 (1958)).

To prove "adverse effect," Kennedy must point to an alternative defense strategy that was reasonable in light of the facts, and must show that the alternative strategy was avoided due to Mr. Zeh's alleged conflict. Pegg, 253 at 1278. Kennedy avers he would have gone to trial "to

test the [G]overnment's proofs" but for Mr. Zeh's alleged conflict of interest. (Doc. 17-1, p. 12.) Although this alternative strategy would have been plausible, it would not have been reasonable under the facts. As highlighted above, the Government had a plethora of objective and direct evidence of Kennedy's guilt in the crimes charged. And Kennedy faced a maximum of 120 years' imprisonment if convicted of each crime he was charged with in the Superseding Indictment. Penalty Certification, <u>United States v. Kennedy, et al.</u>, 2:14-cr-12 (S.D. Ga. June 4, 2014), ECF No. 209.

Considering the Government's case against Kennedy, Mr. Zeh's strategy to eschew trial and, instead, to strike a plea deal for Kennedy is clearly supported by the record. If Kennedy had not pleaded guilty, he would have faced a probable lifetime in jail, rather than a maximum of twenty years under the plea deal, and would have had to overcome the Government's mountain of non-testimonial evidence against him. Moreover, given Kennedy's criminal record, the Government could have sought a 21 U.S.C. § 851 sentencing enhancement against him, but did not do so because of the plea deal.[8] Plea Agreement, <u>United States v. Kennedy, et al.</u>, 2:14-cr-12 (S.D. Ga. July 15, 2014), ECF No. 425, p. 2–3; <u>see also</u> (PSI ¶¶ 35–43.). Thus, in this case, proceeding to trial was not a "reasonable alternative" to securing a favorable plea deal.

Furthermore, Kennedy fails to establish the required "link" between Mr. Zeh's alleged conflict of interest and his decision to forego trial. Simply put, there are no facts in Kennedy's

---

[8] Kennedy argues Mr. Zeh was ineffective because he did not object to the Government's alleged breach of this provision of the plea agreement. (Doc. 17-1, pp. 14–15, 20.) Kennedy, however, is mistaken. The Government did not breach the plea agreement because it did not file a Section 851 sentencing enhancement. <u>See</u> J., <u>United States v. Kennedy, et al.</u>, 2:14-cr-12 (S.D. Ga. Feb. 18, 2015), ECF No. 627. If no plea agreement had been reached and the Government filed a Section 851 sentencing enhancement notice against Kennedy, he would have faced a minimum of (10) years' imprisonment and a maximum of life imprisonment on Count 1 alone, rather than the twenty year (20) maximum he received. <u>Compare</u> 21 U.S.C. §§ 841(b)(1)(B)(viii), <i>and</i> 851, <i>with</i> 841(b)(1)(C), <i>and</i> 846. What Kennedy believes to be a sentencing enhancement is actually his criminal history Guidelines range, which is separate and apart from a Section 851 prior conviction sentencing enhancement and cannot alter the statutory maximum sentence allowed under 21 U.S.C. § 846 like a Section 851 sentencing enhancement would.

Amended Motion or the case record showing that Mr. Zeh opted to pursue a plea deal for Kennedy, rather than going to trial, out of his loyalty to Mr. Carter. Kennedy has not shown that Mr. Zeh's "actual conflict adversely affected [his] decision to plead guilty." Pegg, 253 F.3d at 1278. Therefore, Mr. Zeh's prior representation of Mr. Carter notwithstanding, Kennedy fails to demonstrate ineffective assistance of counsel under Cuyler.

**B.    Strickland Standard**

In addition to Kennedy's conflict of interest allegations, he alleges a wide variety of ordinary ineffective assistance of counsel claims, such as Mr. Zeh's purported unprofessional errors and misleading plea negotiation advice. (Doc. 17-1, p. 12–15, 17–19.) As noted above, actual ineffectiveness claims alleging deficient attorney performance outside the context of conflicted representation "are subject to a general requirement that the defendant affirmatively prove prejudice." Strickland, 466 U.S. at 693. In addition to the prejudice prong, "[i]t is petitioner's burden to 'establish that counsel preformed outside the wide range of reasonable professional assistance' by making 'errors so serious that [counsel] failed to function as the kind of counsel guaranteed by the Sixth Amendment.'" LeCroy v. United States, 739 F.3d 1297, 1312 (11th Cir. 2014) (quoting Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (second alteration in original)).

"Showing prejudice requires petitioner to establish a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. (internal citation omitted). "The prejudice prong requires a petitioner to demonstrate that seriously deficient performance of his attorney prejudiced the defense." Id. at 1312–13. "The likelihood of a different result must be substantial, not just conceivable." Harrington v. Richter, 562 U.S. 86, 112 (2011). A reasonable probability of a different result "is a probability sufficient

to undermine confidence in the outcome." <u>Strickland</u>, 466 U.S. at 794. "In evaluating performance, 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" <u>LeCroy</u>, 739 F.3d at 1312 (quoting <u>Strickland</u>, 466 U.S. at 690). "If a petitioner cannot satisfy one prong, we need not review the other prong." <u>Duhart v. United States</u>, 556 F. App'x 897, 898 (11th Cir. 2014). Thus if a defendant cannot show prejudice, the Court need not determine whether defendant's allegations show his counsel's performance fell below an objective standard of reasonableness.

"[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." <u>Strickland</u>, 466 U.S. at 690. Further, retrospective judicial scrutiny of counsel's performance "must be highly deferential" and must "eliminate the distorting effects of hindsight." <u>Id.</u> at 689.

Kennedy asserts that but for Mr. Zeh's unprofessional errors he would have proceeded to trial.[9] (Doc. 17-1, p. 2.) The record before the Court belies this assertion. When a defendant enters a guilty plea pursuant to Rule 11 proceedings, "there is a strong presumption that the statements made during the colloquy are true" and his plea is knowing and voluntary. <u>United States v. Gonzalez-Mercado</u>, 808 F.2d 796, 800 n.8 (11th Cir. 1987). A defendant must live with what he has told a court under oath. In the context of a plea hearing, the United States Supreme Court has stated that "the representations of the defendant . . . at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent

---

[9] While Kennedy asserts several general and conclusory claims of ineffective assistance, Kennedy specifically asserts Mr. Zeh's performance was deficient because he failed to obtain a PSI prior to entering Kennedy's plea, resulting in a perceived "bait and switch" when the sentence was more than expected. (Doc. 17-1, pp. 13–16, 20.) This assertion, however, is unfounded because the Court, as a matter of course, does not require, and the United States Probation Office does not issue, a PSI until *after* a defendant enters a guilty plea. Thus, Kennedy cannot show Mr. Zeh's failure to obtain a PSI prior to entering a guilty plea was objectively unreasonable, much less that he was prejudiced by it.

collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 73–74 (1977). The defendant's representations are presumptively trustworthy and are considered conclusive absent compelling evidence showing otherwise. Id. A defendant's guilty plea, however, is not knowing and voluntary if he pleaded guilty on advice that fell "outside the range of competence demanded of attorneys in criminal cases." United States v. Munguia-Ramirez, 267 F. App'x 894, 897 (11th Cir. 2008) (internal citation omitted).

The standard for determining the validity of a guilty plea is "whether the plea represents a voluntary[,] intelligent choice among the alternative courses open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31 (1970); Boykin v. Alabama, 395 U.S. 238, 242 (1969). A movant "alleging prejudice with respect to the plea process must demonstrate a reasonable probability that he would have gone to trial rather than enter the plea, but for counsel's errors." Martinez v. Sec'y, Fla. Dep't of Corr., 684 F. App'x 915, 922 (11th Cir. 2017) (citing Lafler v. Cooper, 566 U.S. 156, 163 (2012)). "Further, the decision to reject the plea must have been 'rational under the circumstances.'" Id. (quoting Padilla v. Kentucky, 559 U.S. 356, 372 (2010)). In a plea situation, the focus of inquiry under the performance prong of Strickland is "whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" Hill, 474 U.S. at 56–57 (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)).

As discussed at length above, Judge Wood informed Kennedy at the outset of the Rule 11 hearing that the purpose of the hearing was for him to understand the case that was pending against him, the rights he was waiving by pleading guilty, the factual basis for his plea, and whether pleading guilty was what Kennedy wanted to do after consultation with his attorney. Change of Plea Hr'g Tr., United States v. Kennedy, et al., 2:14-cr-12 (S.D. Ga. June 10, 2015),

ECF No. 666, pp. 2–3. Before Kennedy swore under penalty of perjury to tell the truth at his Rule 11 hearing, Kennedy averred that no one was forcing him to plead guilty and that pleading guilty was what he wanted to do. Id. at p. 3. Judge Wood discussed the specific rights Kennedy was afforded if he chose to persist with a not guilty plea; Kennedy stated under oath that he understood he was waving those rights by pleading. Id. at pp. 7–8. Kennedy further stated that he and Mr. Zeh discussed the plea agreement together, he was satisfied with Mr. Zeh's representation, had no complaints whatsoever, and had spoken with Mr. Zeh about the facts and law of his case. Id. at pp. 9–10. Judge Wood explained how his sentence would be determined following his plea deal and asked Kennedy whether anyone had promised him an exact sentence, to which he responded "No, ma'am." Id. at pp. 14–15.

Kennedy verified that AUSA Bourne's summary of the plea agreement was consistent with the plea he had signed. Id. at pp. 16-17. Judge Wood asked Kennedy whether he wanted to plead guilty because he was, in fact, guilty of Count 1 in the Superseding Indictment, and he answered in the affirmative. Id. at p. 19. Kennedy declared that he understood the rights and privileges he was waiving by pleading guilty and proceeded to do so. Id. at pp 19–20. Judge Wood determined Kennedy's guilty plea was knowing and voluntary, and Kennedy reaffirmed that he was pleading of his own volition. Id. at p. 20. Special Agent Livingston then provided a factual basis for Kennedy's plea, and Kennedy agreed with the Government's factual basis. Id. at pp. 21–23. Judge Wood accepted Kennedy's plea and adjudged him guilty of the charged offense. Id. at p. 23.

To be clear, Kennedy testified in open court that he was satisfied with Mr. Zeh's representation, had no complaints whatsoever about that representation, and had discussed the law and facts of his case with Mr. Zeh. Kennedy cannot prevail by simply retracting his sworn

testimony on collateral attack. He said nothing during his Rule 11 hearing to indicate he wished to raise a conflict issue with Mr. Zeh's prior representation, despite him being put on notice of any potential conflict of interest issues by Mr. Zeh. In addition, Mr. Zeh was able to negotiate favorable plea terms with the Government whereby Kennedy was sentenced to 240 months' imprisonment when he was facing 120 years' imprisonment and likely prior conviction sentencing enhancements under Section 851 absent the plea agreement. See Penalty Certification, United States v. Kennedy, et al., 2:14-cr-12 (S.D. Ga. June 4, 2014), ECF No. 209; J., United States v. Kennedy, et al., 2:14-cr-12 (S.D. Ga. Feb. 23, 2015), ECF No. 627. In accordance with this agreement, Kennedy was able to secure a dismissal of the remaining Counts of the Superseding Indictment and avoid statutory sentencing enhancements. Plea Agreement, United States v. Kennedy, et al., 2:14-cr-12 (S.D. Ga. July 15, 2014), ECF No. 425, p. 2–3. Under Count 1 alone, had Kennedy pleaded guilty to the entirety of it rather than pursuant to the plea agreement, he would have faced a statutory maximum of 40 years' imprisonment and an advisory Guidelines range of at least 262 months to 327 months' imprisonment. (PSI, ¶ 61.)

Given the weight of evidence against him and the prospect of life in prison, a decision to decline a plea agreement and proceed to trial would not have been "rational under the circumstances." As such, Kennedy fails to establish the prejudice prong because he cannot show "a reasonable probability . . . that the result of [his] proceeding would have been different" in light of the circumstances of his plea deal. Kennedy's admissions in open court before Judge Wood in this case are conclusive, and I find that he offers no factual allegations in his Amended Section 2255 Motion that compel a contrary conclusion by this Court. Nothing in the Rule 11 hearing transcripts, the sentencing hearing transcripts, or elsewhere in the record demonstrates

that Mr. Zeh's alleged deficiencies fell below the standard of reasonableness[10] or prejudiced Kennedy. Kennedy's conclusory assertion that Mr. Zeh was ineffective during the plea phase and, had it not been for Mr. Zeh's ineffective assistance, he would not have pleaded guilty, is belied by the record before the Court and is without merit. As Kennedy cannot establish the deficient performance prong or the prejudice prong, he cannot show ineffective assistance of counsel under Strickland.

Accordingly, because Kennedy is not entitled to relief under either the Cuyler or Strickland standards for ineffective assistance of counsel, the Court should **DENY** ground one of Kennedy's Motion without an evidentiary hearing.

## II. Kennedy's Prosecutorial Misconduct Claims

Kennedy alleges various instances of prosecutorial misconduct in ground two, and he asserts the Government's alleged prosecutorial misconduct denied him due process of law and that he would have proceeded to trial but for the Government's actions. (Doc. 17-1, pp. 2–11.) The Government maintains that Kennedy's allegations in this respect are conclusory and devoid of factual basis. (Doc. 18, p. 2–3.) A thorough review of Kennedy's Section 2255 Motion reveals that he offers many conclusory allegations of prosecutorial misconduct but few, if any, specific facts.

As previously noted, a movant is not entitled to habeas relief "when his claims are merely conclusory allegations unsupported by specifics or contentions that in the face of the record are

---

[10] Kennedy can only marshal conclusory allegations of Mr. Zeh's alleged deficient performance because the facts and record before the Court show Mr. Zeh's performance met the objective standard of reasonableness. Mr. Zeh filed numerous pretrial motions on Kennedy's behalf, successfully negotiated a favorable plea deal for him, advised him throughout the course of proceedings, lodged multiple objections to the PSI, obtained an acceptance of responsibility Guidelines reduction before Judge Wood, and pursued a direct appeal at Kennedy's behest, among other things. Kennedy offers no concrete facts to the contrary. Accordingly, having reviewed the record and Kennedy's assertions, the Court finds that Kennedy fails to show Mr. Zeh's performance fell "outside the wide range of reasonable professional assistance."

wholly incredible." <u>Tejada</u>, 941 F.2d at 1559 (citation omitted). "The allegations must be factual and specific, not conclusory. Conclusory allegations are simply not enough to warrant a hearing." <u>Chavez v. Sec'y Fla. Dep't of Corr.</u>, 647 F.3d 1057, 1061 (11th Cir. 2011) (citing <u>San Martin v. McNeil</u>, 633 F.3d 1257, 1271 (11th Cir. 2011). For a movant proceeding *pro se*, the Court will liberally construe the pleading, but he or she "must suggest (even if inartfully) that there is at least some factual support for a claim; it is not enough just to invoke a legal theory devoid of any factual basis." <u>Jones v. Fla. Parole Comm'n</u>, 787 F.3d 1105, 1107 (11th Cir. 2015). "An evidentiary hearing may be necessary where the material facts are in dispute, but a [movant] is not entitled to an evidentiary hearing when his claims are merely conclusory allegations unsupported by specifics." <u>Pugh v. Smith</u>, 465 F.3d 1295, 1300 (11th Cir. 2006) (citations omitted). Stated another way, "if a habeas petition does not allege enough specific facts, that if they were true, would warrant relief, the petitioner is not entitled to an evidentiary hearing." <u>Chavez</u>, 647 F.3d at 1060 (citing <u>Allen v. Sec'y Fla. Dep't of Corr.</u>, 611 F.3d 740, 763 (11th Cir. 2010). Therefore, because solemn representations at a plea hearing by a defendant, his attorney, and the prosecutor "carry a strong presumption of verity" and "constitute a formidable barrier in subsequent collateral proceedings," a movant's later "presentation of conclusory allegations unsupported by specifics is subject to summary dismissal . . . ." <u>Blackledge</u>, 431 U.S. at 73–74 (citing <u>Machibroda v. United States</u>, 368 U.S. 487, 495–96 (1962) and <u>Price v. Johnston</u>, 334 U.S. 266, 286–87 (1948)).

In this case, Kennedy's contentions regarding prosecutorial misconduct are essentially legal conclusions disconnected from factual specifics. For example, Kennedy alleges that the Government "had in its possession exculpatory information and impeachment evidence demonstrating the narcotics seized were not entirely controlled substances, but rather 'carrier

materials.'" (Doc. 17-1, p. 4.) Yet he fails to indicate what that information and evidence was. Likewise, Kennedy asserts the Government, in collusion with Mr. Zeh, withheld information pertaining to the credibility of paid criminal informants. (Id.) But again, Kennedy fails to specifically indicate what this information was or who the informants were. The balance of Kennedy's prosecutorial misconduct claims proceed in the same manner—a conclusory misconduct allegation is made without any specific factual support.

What is likely Kennedy's most critical allegation, that lab reports withheld by the Government demonstrate innocence and a lack of subject matter jurisdiction based on the quantity of drugs calculated, does not provide any surrounding facts or specify how the lab reports show what Kennedy claims or what the correct calculation should have been. (17-1, p. 7–8.) Moreover, Kennedy agreed with the Government's factual basis and admitted to the truth of it while under oath at his Rule 11 proceeding. Change of Plea Hr'g Tr., United States v. Kennedy, et al., 2:14-cr-12 (S.D. Ga. June 10, 2015), ECF No. 666, pp. 23. He may not now dispute that sworn testimony in order to obtain habeas relief. Furthermore, when asked by Judge Wood at the Rule 11 hearing whether either the Government or Mr. Zeh were aware of any prosecutorial misconduct, both parties responded in the negative and Kennedy remained silent. (Id. at p. 19.) In light of this testimony and Kennedy's failure to include specific prosecutorial misconduct facts in his Amended Section 2255 Motion, Kennedy's prosecutorial misconduct claim does not pass muster.

Accordingly, because Kennedy has not shown facts that if true would establish prosecutorial misconduct, and entitle him to relief, the Court should **DENY** ground two of Kennedy's Motion without an evidentiary hearing.[11]

---

[11]    In addition, Kennedy's comprehensive collateral attack waiver in his plea agreement provides independent, sufficient grounds for the Court to **DISMISS** Kennedy's prosecutorial misconduct claim.

### III. Leave to Appeal *in Forma Pauperis* and Certificate of Appealability

The Court should also deny Kennedy leave to appeal *in forma pauperis*. Though Kennedy has, of course, not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal. Fed. R. App. P. 24(a)(3) (trial court may certify that appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed"). An appeal cannot be taken *in forma pauperis* if the trial court certifies that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. Cty. of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). An *in forma pauperis* action is frivolous, and thus not brought in good faith, if it is "without arguable merit either in law or fact." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Additionally, under 28 U.S.C. § 2253(c)(1), an appeal cannot be taken from a final order in a habeas proceeding unless a certificate of appealability is issued. Pursuant to Rule 11 of the Rules Governing Section 2255 cases, the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability may issue only if the applicant makes a substantial showing of a denial of a constitutional right. The

---

Plea Agreement, United States v. Kennedy, et al., 2:14-cr-12 (S.D. Ga. July 15, 2014), ECF No. 425, p. 3. See Yi v. United States, No. 1:13-CR-63-ODE-GGB-1, 2015 U.S. Dist. LEXIS 59918, at *11 (N.D. Ga. Mar. 5, 2015) ("The record demonstrates that Movant knowingly and voluntarily agreed to the appeal waiver, and it bars his prosecutorial misconduct claim.") (citing Williams v. United States, 396 F.3d 1305, 1342 (11th Cir. 2005).

decision to issue a certificate of appealability requires "an overview of the claims in the habeas petition and a general assessment of their merits." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336 (2003). In order to obtain a certificate of appealability, a petitioner must show "that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." <u>Id.</u> "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000); <u>see also</u> <u>Franklin v. Hightower</u>, 215 F.3d 1196, 1199 (11th Cir. 2000). "This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims." <u>Miller-El</u>, 537 U.S. at 336.

Based on the above analysis of Kennedy's Amended Motion and the Government's Response, and applying the Certificate of Appealability standards set forth above, there are no discernable issues worthy of a certificate of appealability; therefore, the Court should **DENY** the issuance of a Certificate of Appealability. If the Court adopts this recommendation and denies Kennedy a Certificate of Appealability, Kennedy is advised that he "may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22." Rule 11(a) of Rules Governing Section 2255 Cases. Furthermore, as there are no non-frivolous issues to raise on appeal, an appeal would not be taken in good faith. Thus, the Court should likewise **DENY** *in forma pauperis* status on appeal.

# CONCLUSION

For the above-stated reasons, the Court **DENIES** Kennedy's Motion to Appoint Counsel (Doc. 20.) Further, I **RECOMMEND** the Court **DENY** Kennedy's Amended Section 2255 Motion, **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal, and **DENY** Kennedy a Certificate of Appealability and *in forma pauperis* status on appeal.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within **fourteen (14) days** of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the pleading must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge. The Court **DIRECTS** the Clerk of

Court to serve a copy of this Report and Recommendation upon Kennedy and the United States Attorney for the Southern District of Georgia.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 1st day of February, 2018.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA